## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION


**MARYJEAN FOSS,**

     **Plaintiff,**

**vs.**                                **CASE NO. 1:04CV46-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

     **Defendant.**

_____/


### REPORT AND RECOMMENDATION

     This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

     Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.      **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 20, 2000, alleging a disability onset date of July 2, 1999, because of degenerative disc disease, back and leg pain, connective tissue disorder, carpal tunnel syndrome, dry eyes, Sjogren's syndrome, depression and anxiety.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on August 8, 2002, and entered an unfavorable decision on September 5, 2002.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.      **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had severe impairments: degenerative disc disease, diffuse connective tissue disorder, and an affective disorder, but that these impairments singly or in combination do not meet the Listings.  (R. 20-21).  The ALJ also found that Dr. Rozboril's opinion was not entitled to weight because it was inconsistent with his treatment notes, which did not indicate high levels of pain, and the reports of Drs. Feussner and Sassano were entitled to more weight because they were supported by other medical evidence of record.  The ALJ also found that the opinion of Dr. Nazario, that Plaintiff's mental condition did not prevent her from working, was consistent with the evidence of record.  The ALJ found that Plaintiff's statements concerning her impairments and their impact on her ability to work are considerably more limited than is established by the medical evidence, her own contemporaneous statements to treating sources, and medical source opinions.  (R. 25).  Based on her residual functional

**No. 1:04CV46-MMP/AK**

capacity, which the ALJ determined was light, he found that she was able to perform her past relevant work.  (R. 26).

## C.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed error when he rejected her testimony about the level of pain she experiences as a result of fibromyalgia; the ALJ erred in not giving Plaintiff a presumption of credibility and failed to articulate specific reasons for rejecting her credibility; and the ALJ erred in not finding her disabled based on the vocational expert's testimony.

The Commissioner responds that the ALJ properly considered her allegations of pain and articulated specific reasons for rejecting her testimony, specifically that her daily activities belied the level of pain she reported, that there were inconsistencies in the record regarding her level of pain, and Dr. Rozboril's opinion that she was disabled is not supported by his treatment notes.  Further, the ALJ found that Plaintiff could perform her past relevant work as a secretary and typist and was not required to use the services of a vocational expert, so any alleged error with regard to the hypothetical is irrelevant.

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:04CV46-MMP/AK**

D.    **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The
Commissioner's decision must be affirmed if it is supported by substantial evidence and
the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422
(11th Cir. 1997).  Findings of fact by the Commissioner which are supported by
substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397,
1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It
is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703
F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the
evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86
F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence
supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624
(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to
the Commissioner's findings, where there is substantially supportive evidence of the
Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d
227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the
Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.
Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's
failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:04CV46-MMP/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him

**No. 1:04CV46-MMP/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

E.   <u>**SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**</u>

Plaintiff received a workers compensation settlement of $20,000.00 on June 8, 2000, for an injury received at work.  (R. 72-73).  She was injured on June 25, 1999, when she lifted a heavy box.  (R. 81).

Plaintiff describes extremely limited daily activities, most everything is done by her husband.  (R. 94-96).  She does nothing socially.  (R. 96).  She describes a severe lack of concentration and inability to remember.  (R. 97).  She also describes severe, unrelenting pain on a daily basis, exacerbated by any activity such that a doctor's appointment takes days or over a week to bring the pain level back down.  (R. 98).  She says that the medication does not relieve the pain.  (R. 99).  She is also weak from anemia.  (R. 100).

**No. 1:04CV46-MMP/AK**

An MRI done on August 1, 1999, showed "a broad based, left foraminal/
extraforaminal disk protrusion at L3/4, which abuts the ventral aspect of the exiting L3
nerve. Otherwise no significant neural foraminal narrowing is appreciated.  Asymmetric
disk bulge to the left at L4/5 causing mild narrowing of the left neural foramina.  No focal
disk protrusion causing mass effect upon the thecal sac."  (R. 131).  X-rays showed
"mild apparent rotatory scoliosis which may be due to muscular spasm or positioning."
(R. 133).

Plaintiff first sought treatment at Urgent Care on September 28, 1999, following
treatment at First Care immediately after her back injury at work on June 25, 1999.   (R.
146-147).  She was diagnosed with lumbar strain, and she was to return in two weeks
with the test results from Dr. Feussner.  (R. 147).

Plaintiff sought emergency medical care for her back pain on October 9, 1999, at
which time the ER doctors were informed that by her primary care doctor at the Urgent
Care Facility that "she seems to be a noncompliant patient," and there was a "[q]uestion
of drug-seeking habits."  (R. 137-138).

On October 12, 1999, Plaintiff herself requested a quad cane from Dr. Sassano,
which the doctor authorized based on her complaints of weakness and loss of balance.
(R. 144).

At a visit with Dr. Sassano at Urgent Care on November 9, 1999, she requested
a "no-work" restriction, and when she was denied it because the doctor did not feel it

**No. 1:04CV46-MMP/AK**

necessary at the time, she became angry and argumentative such that the doctor left the room and told her he would refer her to another physician.  (R. 142).

Treatment notes from Primary Care Physicians (Dr. Bette Boysen) show that in July 1999, she sought treatment for "diffuse muscle and joint aches," although she told them she was being treated for the workers compensation injury by another doctor.  (R. (R. 150-153).  She requested on July 6, 1999, (after her accident lifting the box) four weeks work release because of anxiety and stress at work.  (R. 153).  Dr. Boysen suggested a referral for counseling.  (R. 153).

Dr. Seldon Longley is apparently Plaintiff's rheumatologist, but it is difficult from his treatment notes to discern a comprehensible treatment plan for any particular condition.  (R. 154-176).

Plaintiff's workers compensation carrier referred her to Dr. Feussner in September 1999, and he diagnosed her with "right L5 radiculopathy, secondary to injury, and degenerative disc disease."  (R. 186).  He gave her an indefinite work release, and on April 25, 2000, he opined that she had a permanent injury of 5%, that she would be on permanent restrictions for her back, and that her connective tissue disorder (treated by Dr. Longley) had caused her work injury to be more acute and to have slowed her recovery.  (R. 183).

Dr. Nazario conducted a consultative examination of her mental status on August 14, 2000, and she appeared in his office walking on a cane with braces on both wrists.

**No. 1:04CV46-MMP/AK**

(R. 190).  He diagnosed her with Adjustment Disorder and found that her emotional condition did not appear severe enough to preclude employment.  (R. 192).

Medical records from Dr. Gwen Hanson show that Plaintiff sought her for a physical exam incident to adopting 4 foster children.  (R. 212-222).  She exhibited anxiety and multiple medical problems.

Dr. Rozboril, who treats her arthritis and fibromylagia, found her to have sleep difficulties and morning stiffness.  (R. 253).  She wore wrist splints, but it did not appear that he prescribed them.  He completed a pain assessment for Plaintiff's attorney and found her to have a chronic pain syndrome of a marked level with mild to moderate levels of restriction.  (R. 268-274).  He also found her to be totally precluded from any type of work.  (R. 275).  A bone density examination conducted for Dr. Rozboril was normal.  (R. 299).

A RFC prepared by a non-examining physician on September 21, 2000, found her able to lift 20 pounds occasionally; 10 pounds frequently; sit, stand or walk six hours out of an 8 hour day; and occasionally able to climb, balance, kneel, crouch and crawl.  (R. 204-211).  No treating source records were in file for review in conjunction with this assessment.

A RFC prepared by a non-examining physician on January 8, 2000, assessed her similarly and was based on treating source records and several MRI's.  (R. 254-261).

**No. 1:04CV46-MMP/AK**

A Psychiatric Review Form prepared by a non-examining psychologist found that her affective disorder affected her ability to function only slightly to none at all.  (R. 194-202).

Dr. Jane Cormier completed a Psychiatric Review Form and found Plaintiff's anxiety related disorder not to be severe.  (R. 239-252).

## F.      SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff appeared at the hearing on August 8, 2002, with her present attorney, Al Bacharach.  (R. 310).  A vocational expert was present and assessed Plaintiff's last job, which lasted ten years, as a sedentary job.  (R. 314).  Plaintiff was 42 years old at the time of the hearing, and she has a bachelor's degree from New York University.  (R. 316).  She last worked in July of 1999, and quit because she was suffering from carpal tunnel syndrome and trying to type and file, and then in June of that year she picked up some boxes and felt a "pop" in her lower back.  (R. 317-318).  She settled a workers compensation claim for this injury for $20,000.  (R. 319).  She stated that she went to Dr. Sessano, Dr. Thysner (phonetically, this is probably a reference to Feussner), and a neurologist, and she claims that the specialists said she could not work.  (R. 321).  Dr. Sessano apparently told her she could return to work and she also claims he gave her a tripod cane.  (R. 322).  She switched from Dr. Longley to Dr. Rozboril because her husband's insurance would not cover Dr. Longley.  (R. 322).  She stated that she has carpal tunnel in her wrists, but was not considered a candidate for surgery because she had "high arthritis," fibromyalgia, "scogen [Sjogren's] syndrome, anemia, and it goes on

No. 1:04CV46-MMP/AK

and on." (R 324).  She has bulging disks in her back which radiates pain down into her right leg.  (R. 324).  The pain in her right leg is continuous, reaching the highest level upon any activity, with a burning, stabbing pain, and a pinching feeling.  (R. 325-326).  She alleviates this pain by rest and elevation of her legs.  (R. 326).  She lives with her husband and four children, ages 10, 8, 6 and 4.  (R. 327).  She is trying to adopt these children, who are her sister's children.  (R. 328).  She lives in a two story house with all of the children upstairs.  (R. 329).  She can sit for 20 minutes to an hour and a half before she needs to get up and move around for a few minutes, then she can sit again for awhile, but she cannot do this three times in a row before she would have to elevate her legs.  (R. 332).  She states that she can only stand about 3 to 5 minutes at a time before she would be feeling fatigued with increased pain in her legs and back.  She can walk 200 feet and would then need to be resting for a few minutes before she could walk another 200 feet, but she could not do it a third time.  (R. 333-334).  She would use the cane for this.  (R. 334).  Plaintiff states that she spends approximately 2 hours a day on the couch with her legs elevated-from 10:00 to 11:00 a.m. and from 1:00 to 2:00 p.m. (R. 334).  After she rests, she "conks out," but she did not elaborate on what this means.  (R. 334).  Plaintiff also claims that she could not  bend over to her feet, she could not kneel down on one leg, and could not lift over her head.  (R. 335-336).  Plaintiff states that she could lift 1 to 4 pounds, but not a gallon of milk.  (R. 336).  She has side effects from Elavil, a drug she takes for sleep, in that she is groggy in the morning, and the Motrin upsets her stomach if she does not eat with it.  (R. 337).  If her

**No. 1:04CV46-MMP/AK**

leg pain acts up during the day, she goes back to sitting on the couch.  (R. 338).

Plaintiff claims that she does none of the household chores, except she will take clothes

out of the dryer and fold them or turn the dishwasher on after her husband loads it.  (R.

339-340).  Scogen's [Sjogren's] syndrome causes her eyes to be dry.  (R. 341).  It also

causes her to have dry mouth and sinuses.  (R. 342).  Plaintiff said her prognosis was

poor in that she would get worse and probably end up in a wheelchair.  (R. 344).

        The vocational expert was asked if restrictions on her ability to stoop, crawl,

kneel and bend would eliminate sedentary work, and he said that it would not nor would

it eliminate any of her past work.  (R. 345).  The expert said her need to elevate her legs

one hour in the morning and one hour in the afternoon could also be accommodated in

these type of jobs.  (R. 347).  However, the expert testified that if she were moderately

limited in her ability to concentrate, and to perform tasks within a schedule and

complete a normal work day or work week because of her level of pain, she would not

be able to perform any job in the labor market.  (R. 347-348).

**G.    DISCUSSION**

        a)    Pain and Plaintiff's credibility

        Pain and other subjective symptoms are treated by the regulations as symptoms

of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not

find disability based on symptoms, including pain alone, "unless medical signs or

findings show that there is a medical condition that could be reasonably expected to

**No. 1:04CV46-MMP/AK**

produce these symptoms."  Accord 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d

1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there
>
> must be objective medical evidence to confirm the severity of the alleged
>
> pain arising from the condition or (2) the objectively determined medical
>
> condition must be of a severity which can reasonably be expected to give
>
> rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Elam v. Railroad Retirement

Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th

Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

"While both the regulations and the Hand standard require objective medical evidence

of a condition that could reasonably be expected to cause the pain alleged, neither

requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held

that "[p]ain alone can be disabling, even when its existence is unsupported by objective

evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v.

Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's

testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d

1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of

pain, he must articulate explicit and adequate reasons, and these reasons must be

based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

The failure to articulate adequate reasons for discrediting pain testimony mandates that

**No. 1:04CV46-MMP/AK**

the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the record supports a finding that she has a medical condition expected to cause pain (fibromyalgia), and therefore her reports of pain should be accepted as true.  Plaintiff also argues that the ALJ failed to adequately articulate a reason for rejecting the opinion of Dr. Rozboril, her treating physician, who found her to have marked levels of pain.

The ALJ found that inconsistencies in Plaintiff's reported daily activities and statements to her treating sources did not support the degree of pain and limitation she claims.  (R. 24-25).  The ALJ commented that Plaintiff reported extreme limitation in daily activities, such as being unable to grip anything, thereby precluding any cooking and being unable to stand for more than 2 or 3 minutes at a time, yet the medical record of examinations of her range of motion, grip strength, and functional abilities to toe walk and heel walk showed no such limitations.  The Court notes that Plaintiff herself stated at the hearing that when the pain, which she said was extreme and unrelenting, became worse she got on the couch and rested with her legs elevated.  This rather simple method for dealing with her worst pain does not support a finding that her pain was so severe as to preclude all work.  Further, although Plaintiff testifed at the hearing that her doctors told her not to work, none of the doctors' notes indicate a total, permanent preclusion from work or any specific limitations, except Dr. Feussner's note that she should have permanent restrictions for her back, which presumably means no lifting

**No. 1:04CV46-MMP/AK**

type of work.  Dr. Rozboril did not indicate any type of limitation until asked to complete a form for Plaintiff's attorney, but his treatment records do not list any such restrictions. An ALJ may reject the opinion of a treating physician if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).

Further, the medical records of two other treating physicians, Drs. Sassano and Feussner, were found to support the ALJ's findings.  (See R. 24).

Plaintiff's own reports also supported the ALJ's findings regarding her pain and limitation.  Plaintiff testified at the hearing that she cares for 4 relatively small children, and her husband works.  The ALJ found that these circumstances belied a woman completely incapacitated by pain.  The ALJ also found that the incident with Dr. Sassano regarding an angry outburst when he refused to give her a "no-work" excuse, and the fact that she *asked* for a quad cane, she was not prescribed one, also supports his finding that her credibility was in question.  Other doctors, both examining and non-

No. 1:04CV46-MMP/AK

examining, had assessed her functional abilities and found her capable of performing a level of sedentary work.  (See R. 204-211; 254-261).  These reports constitute substantial evidence in the undersigned's opinion and support the ALJ's credibility finding regarding Plaintiff's level of pain.

        b)     Vocational expert

Based on the RFC assessments in the record, the ALJ had support for his finding that Plaintiff could perform sedentary work.  At the hearing the vocational expert testified that her past relevant work had been sedentary.  (R. 345).  As the Commissioner correctly notes, when the ALJ finds that a person can perform her past relevant work the sequential evaluation process stops at Step Four, and no vocational expert testimony regarding other jobs in the national economy is necessary.  20 CFR § 404.1520(a)(4).

Further, the only testimony the expert gave at the hearing that supported Plaintiff's claim that she could do no work was given in response to her attorney's hypothetical of someone unable to complete a normal work day, be punctual and complete the entire week, and unable to concentrate or complete tasks on a schedule. There is nothing in the record to support these type of limitations.  All of the mental evaluations of Plaintiff found her able to concentrate and maintain persistence and pace.  Plaintiff claimed that one medication, Elavil, made her groggy in the morning, but there is no evidence that this would prevent her from being at work on time or maintaining a regular schedule.

**No. 1:04CV46-MMP/AK**

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this __25th__ day of August, 2005.


s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:04CV46-MMP/AK**